Citation Nr: 1528171 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 09-44 487 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for erectile dysfunction, to include as secondary to the service-connected diabetes mellitus type II.

2. Entitlement to service connection for bronchitis, claimed as due to exposure to herbicides during service.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

Steve Ginski, Associate Counsel


INTRODUCTION

The Veteran served on active duty from November 1964 to May 1976.

This matter comes before the Board of Veterans' Appeals (Board) on appeal of rating decisions issued in May 2009 and January 2010 by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

The Veteran testified before an Acting Veterans Law Judge at a hearing at the RO in July 2011. A transcript of his testimony is of record. The Board sent the Veteran a letter in July 2014 advising him that the Acting Veterans Law Judge who presided over the July 2011 hearing is no longer employed by the Board. The Veteran was asked to advise VA within 30 days if he wished to have another hearing before a current Veterans Law Judge, but he did not respond. Therefore, the Board presumes the Veteran does not want another hearing and will proceed accordingly.

In April 2012 the Board remanded the case to the Agency of Original Jurisdiction (AOJ) for additional development. In August 2014, the Board again remanded the case. In that remand, the Board directed the AOJ to attempt to obtain records from the Social Security Administration (SSA) that were relevant to the Veteran's disability determination before that agency. That action completed, the appeal is now properly before the Board for appellate consideration. Stegall v. West, 11 Vet. App. 268 (1998).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement of relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2014). A remand is necessary in this case in order to obtain a medical examination. 

The Veteran's claims are for entitlement to service connection for erectile dysfunction and for bronchitis. 

The Veteran claims that chronic bronchitis had onset as a result of exposure to Agent Orange while in active service in the Republic of Vietnam. The Board notes that VA has not afforded the Veteran an examination with regard to his claim of service connection for bronchitis. 

Under McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006), a VA medical examination must be provided when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim. See 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i). 

In the present case, VA treatment records and the Veteran report chronic bronchitis during the course of the appeal. Also, service treatment records show that the Veteran served in Vietnam and is thus presumed to have been exposed to herbicides during this time. See 38 C.F.R. § 3.307(a)(6)(iii). Additionally, the Veteran's service treatment records document upper respiratory symptoms throughout his active service. Thus, the first and second McLendon elements are satisfied. 

Turning to the third McLendon element, the Veteran has reported that he has continued to have recurrent bronchitis since service. For instance, in his March 2010 notice of disagreement, the Veteran testified that he was diagnosed with bronchitis within one year of separation from service. Also, in his July 2011 hearing before the Board, the Veteran indicated that he had received diagnoses of pneumonia during service, and that the times he had pneumonia had led to his chronic bronchitis. The Veteran described having upper respiratory symptoms at the time of his separation exam and being urged to report to a VA facility after returning home in order to receive treatment. In this regard, the Board notes that the Veteran is competent to report having a continuity of symptomatology (i.e., recurrent upper respiratory symptoms) since service. See Barr v. Nicholson, 21 Vet. App. 303, 307-08 (2007); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Additionally, the Veteran's arguments seem to be based on multiple theories of entitlement. Essentially, while the Veteran has exclusively claimed his bronchitis had onset as a result of exposure to herbicide agents during active duty, he has also provided credible statements that upper respiratory symptoms had onset contemporaneous to or directly after separation from service. This, in conjunction with the already noted presence of upper respiratory symptoms during service, leads the Board to find that there is evidence of record indicating that bronchitis may be associated with service, thereby satisfying the third McLendon element.

Because there is insufficient medical evidence of record addressing whether the Veteran has a respiratory disorder that was incurred during or aggravated by his military service, a VA examination and medical opinion addressing the nature and etiology of any respiratory disorder is necessary for the Board to make a decision on this claim. See McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006); see also 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4)(i).

A remand is also necessary in order to obtain another VA examination and medical opinion for the Veteran's claim of service connection for erectile dysfunction. The Veteran claims that his service-connected diabetes mellitus, type 2, caused erectile dysfunction. VA afforded the Veteran an examination for this claim in March 2009. In the opinion portion of the examination, the examiner noted that the Veteran's erectile dysfunction began in 1990, while diabetes mellitus, type 2, had onset in 2000. Though not specifically stating that the Veteran's erectile dysfunction was not due to diabetes mellitus, type 2, the Board notes the examiner's opinion implied that conclusion based erectile dysfunction having onset prior to diabetes mellitus, type 2. However, in his May 2009 notice of disagreement, the Veteran asserted that he had received a diagnosis of diabetes mellitus, type 2, in 1977. He made this same assertion in his November 2009 VA Form 9, arguing that he was informed that he was a "borderline diabetic" in the late 1970's. 

The Board notes that the Veteran's reports are not corroborated by medical evidence of record because the Veteran did not supply, nor was the RO able to obtain, the private treatment records that document pre-diabetic symptoms or an actual diagnosis of diabetes mellitus, type 2, from shortly after the Veteran's separation from active service. However, the Board finds the Veteran credible in his assertions that diabetes mellitus, type 2, had an earlier onset date than the one supplied by the March 2009 VA examiner in rendering his opinion. 

Therefore, because the March 2009 VA medical opinion of record with regard to the Veteran's claim of service connection for erectile dysfunction is based on facts that are in conflict with the Veteran's own statements, the Board finds that a new examination is necessary that addresses this inconsistency and provides an opinion that contemplates the Veteran's credible reports. 

Accordingly, the case is REMANDED for the following action:

1. Arrange to have the Veteran scheduled for a respiratory examination. The entire claims file (i.e., both the paper claims file and any relevant medical records contained in the Veteran's Virtual VA and VBMS eFolders), as well as a copy of this Remand, should be made available to and reviewed by the examiner, and it should be confirmed that such records were available for review.

(a) After conducting an examination of the Veteran and performing any clinically-indicated diagnostic testing, the examiner should identify any respiratory disorders present since the Veteran filed his claim in May 2009.

(b) The examiner should offer an opinion as to whether it is at least as likely as not (50 percent or greater probability) that any respiratory disability diagnosed had its clinical onset during active service or is related to any in-service disease, event, or injury, to include exposure to Agent Orange. The examiner should acknowledge and discuss the Veteran's reports that he received a diagnosis of bronchitis immediately following his separation from active service, and has continued to have such symptoms since.

A complete rationale must be provided for all opinions rendered. If the examiner cannot provide the requested opinions without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

2. Arrange to have the Veteran scheduled for an examination for his claim of entitlement to service connection for erectile dysfunction. The entire claims file (i.e., both the paper claims file and any relevant medical records contained in the Veteran's Virtual VA and VBMS eFolders), as well as a copy of this Remand, should be made available to and reviewed by the examiner, and it should be confirmed that such records were available for review.

The examiner is asked to provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that erectile dysfunction was caused by his service-connected diabetes mellitus, type 2. The examiner should acknowledge and discuss the Veteran's reports that he received a diagnosis of diabetes mellitus in 1977, preceding his diagnosis of erectile dysfunction. 

A complete rationale must be provided for all opinions rendered. If the examiner cannot provide the requested opinions without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

3. Then, readjudicate the claim on appeal. If the benefit sought is not granted in full, provide the Veteran and his representative with a supplemental state of the case and allow an appropriate opportunity to respond thereto before returning the case to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).
This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
GAYLE E. STROMMEN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).